**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KAYLA JOHNSON,

Plaintiff,

Case No. 26-

v.

Hon.

HURLEY MEDICAL CENTER, and CATHERINE METZ, in her individual capacity,

Defendants.

_______________________________________/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
VICTOR J. MASTROMARCO, III (P86871)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
tmastromarco@mastromarcofirm.com
_______________________________________/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint.

**PLAINTIFF'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, KAYLA JOHNSON, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, HURLEY MEDICAL CENTER and CATHY METZ, stating more fully as follows:

## PARTIES, JURISDICTION, AND VENUE

1. That Plaintiff, KAYLA JOHNSON, is an individual residing in the County of Genesee, State of Michigan.

2. That Plaintiff is an African-American female.

3. That Defendant, HURLEY MEDICAL CENTER ("Hurley"), is a public hospital owned by the City of Flint, a Michigan municipal corporation, and operated through the City's Board of Hospital Managers, with its principal place of business located at One Hurley Plaza, Flint, Michigan 48503, in the County of Genesee.

4. That at all times material hereto, Hurley was a public entity of the City of Flint and acted under color of state law.

5. That Defendant, CATHERINE "CATHY" METZ ("Metz"), upon information and belief, resides in the State of Michigan and, at all times material hereto, was employed by Hurley as Administrator with supervisory authority over Hurley's Behavioral Health Unit.

6. That Metz is Caucasian.

7. That Metz is sued in her individual capacity.

8. That at all times material hereto, Metz acted within the course and scope of her employment with Hurley and under color of state law.

9. That this Court has original jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), as that claim arises under 42 U.S.C. § 1983 and the Constitution and laws of the United States.

10. That this Court has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a), as that claim arises from the same nucleus of operative facts and forms part of the same case or controversy as Plaintiff's federal claim.

11. That venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendants reside in this District and the events giving rise to Plaintiff's claims occurred in the City of Flint, County of Genesee, State of Michigan.

12. That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

## COMMON ALLEGATIONS

### Plaintiff's Employment and Qualifications

13. That Plaintiff began her employment with Hurley in 2020 as a Nurse Extern on Hurley's Behavioral Health Unit.

14. That in April 2021, Plaintiff obtained her license as a Registered Nurse and thereafter worked as a Registered Nurse on Hurley's Behavioral Health Unit.

15. That from approximately January 2022 through October 2022, Plaintiff completed two (2) travel assignments in mental health nursing to broaden her clinical experience, after which she returned to Hurley's Behavioral Health Unit.

16. That by February 2025, Plaintiff had approximately four (4) to five (5) years of mental health experience, the substantial majority of it on Hurley's Behavioral Health Unit, including approximately four (4) years as a Registered Nurse.

17. That Plaintiff had mastered the Behavioral Health Unit's policies and procedures, and her coworkers regarded her as a leader on the unit.

18. That at all times material hereto, Plaintiff met Hurley's legitimate performance expectations.

**The Clinical Coordinator Position**

19. That in or about late January 2025, Hurley created and posted a new position of Clinical Coordinator for the Behavioral Health Unit (the "Clinical Coordinator position").

20. That the Clinical Coordinator position was created to assist the unit's Nurse Manager with administrative duties and to provide education to the unit's nursing staff, as the unit no longer had a dedicated unit educator.

21. That the posting for the Clinical Coordinator position required two (2) to three (3) years of mental health experience and licensure as a Registered Nurse.

22. That the Clinical Coordinator position was a promotion from Plaintiff's position as a Registered Nurse, carrying greater compensation, responsibility, and opportunity for advancement.

23. That Plaintiff met or exceeded every stated qualification for the Clinical Coordinator position.

24. That Plaintiff timely applied for the Clinical Coordinator position.

25. That Plaintiff was the only Black applicant for the Clinical Coordinator position.

26. That Hurley narrowed the applicant pool to three (3) finalists, including Plaintiff and Alexandra Watkins ("Watkins").

27. That Watkins is Caucasian.

28. That at the time, Watkins held the position of Intake Liaison, a position Hurley had created in 2024 to recruit patients to the Behavioral Health Unit.

29. That Watkins had never worked as a nurse on the Behavioral Health Unit.

30. That upon information and belief, Watkins's prior mental health experience consisted of work as a technician, not as a nurse.

31. That Plaintiff was substantially more qualified for the Clinical Coordinator position than Watkins, who had never performed the nursing work on the unit that the position required its holder to teach.

**Defendant Metz Preselects Watkins**

32. That the selection process required each finalist to deliver a presentation and answer questions before an interview panel consisting of Nakia Allen, then the Nurse Manager of the Behavioral Health Unit; Metz; Jeffrey Overman, Hurley's Chief Nursing Officer; and Joseph Novak, Director (the "panel").

33. That Allen, Plaintiff's direct manager, is African-American.

34. That Metz held a position of higher rank than Allen.

35. That Allen supported Plaintiff's candidacy for the Clinical Coordinator position.

36. That upon information and belief, the Clinical Coordinator position was created with Watkins in mind.

37. That during the selection process, and before the selection decision was made, Metz stated to Allen, in words or substance: "You have your dog in the race, and I have mine."

38. That in making that statement, Metz referred to Plaintiff as Allen's candidate and to Watkins as Metz's own.

39. That Metz's statement reflects that Metz, a panel member holding authority superior to Allen's, had committed to selecting Watkins, the Caucasian candidate, before the selection process was complete.

## The Interview Process Is Manipulated to Plaintiff's Detriment

40. That Plaintiff's interview was originally scheduled for the morning of Tuesday, February 11, 2025.

41. That Plaintiff arrived early and prepared, but upon her arrival at approximately 8:00 a.m., she was informed that her interview was cancelled because Overman was ill.

42. That upon information and belief, other qualified Hurley personnel were available to take Overman's place on the panel, yet Hurley elected not to proceed with Plaintiff's interview.

43. That upon information and belief, after Plaintiff's interview was cancelled, the interview questions were changed.

44. That Metz rescheduled Plaintiff's interview for the morning of Thursday, February 13, 2025, immediately following Plaintiff's overnight shift, which was scheduled to end at 7:00 a.m. that morning.

45. That when Plaintiff realized the conflict, she promptly contacted Metz and asked to reschedule.

46. That Metz refused, claiming it was too late to change the schedule because she had already booked the other candidates' interviews, and directed Plaintiff to ask Allen to release her from her shift early.

47. That although Plaintiff was released early from her shift, she was forced to interview without adequate rest after working overnight.

48. That on information and belief, Metz scheduled Watkins to interview last, on the morning of Monday, February 17, 2025, before Watkin's scheduled shift, after a full weekend to prepare.

49. That upon information and belief, before Watkins interviewed, Plaintiff's presentation, Plaintiff's interview answers, and/or the interview questions were made available to Watkins by Metz and/or Overman.

50. That Plaintiff was afforded no comparable advance access to interview materials.

51. That during Plaintiff's interview, Metz repeatedly challenged Plaintiff's answers.

52. That at the conclusion of Plaintiff's interview, Metz asked Plaintiff whether she was in school, and when Plaintiff answered that she was, Metz responded, "I foresee you being in school as a distraction."

**Hurley Selects the Less-Qualified Caucasian Candidate**

53. That in or about late February of 2025, Hurley selected Watkins for the Clinical Coordinator position.

54. That the selection was made by, or at the direction of, Metz and Overman.

55. That upon information and belief, Hurley took the position that Watkins's experience as a behavior health technician satisfied the posting's mental health experience requirement.

56. That upon information and belief, within approximately eighteen (18) months of her selection, Watkins was promoted again, to Nurse Manager of the Behavioral Health Unit.

57. That Defendants failed to promote Plaintiff to the Clinical Coordinator position because of her race.

58. That Metz's preselection of Watkins, the cancellation and rescheduling of Plaintiff's interview to her detriment, the alteration of the interview questions, the provision of interview materials to Watkins, and the elevation of a less-qualified Caucasian candidate over the most qualified candidate, who is Black, each evidence that any reason Defendants offer for the selection is a pretext for race discrimination.

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 (Against All Defendants)

59. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 above, word for word and paragraph for paragraph, as if fully restated herein.

60. That 42 U.S.C. § 1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage of any State, subjects, or causes

to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law or suit in equity.

61. That the Fourteenth Amendment provides, in relevant part:

> No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.
>
> U.S. CONST. amend. XIV, § 1.

62. That the Equal Protection Clause prohibits public employers and their officials from intentionally discriminating against employees on the basis of race in employment decisions, including promotion decisions. *See Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988).

63. That 42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(a)–(b).

64. That 42 U.S.C. § 1983 provides the remedy for violations of 42 U.S.C. § 1981 committed by state actors. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012).

65. That a plaintiff alleging race discrimination under § 1983 must establish the same elements required to establish a disparate-treatment claim under Title VII

of the Civil Rights Act of 1964. *See Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

66. That at all times material hereto, Defendants acted under color of state law.

67. That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her race.

68. That Plaintiff applied for, and was qualified for, the Clinical Coordinator position.

69. That Plaintiff suffered an adverse employment action when Defendants denied her the Clinical Coordinator position.

70. That Defendants instead selected Watkins, who is not a member of Plaintiff's protected class and who was less qualified for the position than Plaintiff.

71. That Plaintiff suffered the above adverse employment action under circumstances that give rise to an inference of intentional race discrimination, as set forth above.

72. That Defendants' proffered reasons, if any, for selecting Watkins over Plaintiff are pretextual, in that they have no basis in fact, did not actually motivate the decision, and/or were insufficient to motivate the decision.

73. That Plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen Watkins over Plaintiff.

74. That Metz personally participated in, directed, and caused the discriminatory denial of the promotion, including by preselecting Watkins, cancelling and rescheduling Plaintiff's interview to Plaintiff's detriment, refusing Plaintiff's request to reschedule, and participating in the selection of Watkins.

75. That at all times material hereto, a public employee's right to be free from intentional race discrimination in promotion decisions was clearly established, and a reasonable official in Metz's position would have known that her conduct violated that right.

76. That upon information and belief, Metz and/or Overman possessed final policymaking authority for Hurley with respect to the selection of the Clinical Coordinator, such that the decision to deny Plaintiff the promotion constitutes the official policy of Hurley.

77. That alternatively, and upon information and belief, Hurley's final policymakers approved the selection of Watkins and the basis for it, thereby ratifying the discriminatory decision.

78. That in denying Plaintiff the promotion, Metz acted with malice and/or reckless or callous indifference to Plaintiff's federally protected rights.

79. That Defendants' actions constitute race discrimination in violation of 42 U.S.C. § 1983.

80. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, health, dental, vision, and/or life insurance benefits, disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, lost opportunities for career advancement, and any other compensation and fringe benefits lost to Plaintiff as a result of Defendants' failure to promote her, along with an additional amount to offset any negative tax consequences of recovery.

81. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

82. That Plaintiff hereby claims punitive damages against Defendant Metz in her individual capacity.

83. That Plaintiff hereby claims the costs of this action and reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988(b)–(c).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), together with

punitive damages against Defendant Metz, costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

**COUNT II – RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**(Against All Defendants)**

84. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 above, word for word and paragraph for paragraph, as if fully restated herein.

85. That the Elliott-Larsen Civil Rights Act ("ELCRA") provides that an employer shall not fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of race. MCL 37.2202(1)(a).

86. That the ELCRA further provides that an employer shall not limit, segregate, or classify an employee in a way that deprives or tends to deprive the employee of an employment opportunity, or otherwise adversely affects the status of the employee, because of race. MCL 37.2202(1)(b).

87. That at all times material hereto, Hurley was an employer within the meaning of MCL 37.2201(a).

88. That at all times material hereto, Metz was an agent of Hurley and therefore an employer within the meaning of MCL 37.2201(a), subject to individual liability under the ELCRA. *See Elezovic v. Ford Motor Co.*, 472 Mich. 408 (2005).

89. That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her race.

90. That Plaintiff applied for, and was qualified for, the Clinical Coordinator position.

91. That Plaintiff suffered an adverse employment action when Defendants denied her the Clinical Coordinator position.

92. That Defendants instead selected Watkins, who is not a member of Plaintiff's protected class and who was less qualified for the position than Plaintiff.

93. That Plaintiff suffered the above adverse employment action under circumstances that give rise to an inference of race discrimination, as set forth above.

94. That Plaintiff's race was a motivating factor that made a difference in Defendants' decision to deny her the Clinical Coordinator position.

95. That Defendants' proffered reasons, if any, for selecting Watkins over Plaintiff are pretextual, in that they have no basis in fact, did not actually motivate the decision, and/or were insufficient to motivate the decision.

96. That Plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen Watkins over Plaintiff.

97. That Defendants' actions constitute race discrimination in violation of the ELCRA, MCL 37.2101 *et seq.*

98. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, health, dental, vision, and/or life insurance benefits, disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, lost opportunities for career advancement, and any other compensation and fringe benefits lost to Plaintiff as a result of Defendants' failure to promote her, along with an additional amount to offset any negative tax consequences of recovery.

99. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

100. That Plaintiff hereby claims damages, the costs of litigation, and reasonable attorney fees and witness fees pursuant to MCL 37.2801 and MCL 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), in addition to

costs, interest, and attorney fees, along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,

THE MASTROMARCO FIRM

Dated: October 7, 2026

By: /s/ *Victor J. Mastromarco, III*

VICTOR J. MASTROMARCO, JR. (P34564)
VICTOR J. MASTROMARCO, III (P86871)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
tmastromarco@mastromarcofirm.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KAYLA JOHNSON,

Plaintiff, Case No. 26-

v. Hon.

HURLEY MEDICAL CENTER, and
CATHY METZ, in her individual capacity,

Defendants.
_________________________________/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
VICTOR J. MASTROMARCO, III (P86871)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
tmastromarco@mastromarcofirm.com
_________________________________/

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, KAYLA JOHNSON, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,

THE MASTROMARCO FIRM

Dated: October 7, 2026

By: /s/ *Victor J. Mastromarco, III*
VICTOR J. MASTROMARCO, JR. (P34564)
VICTOR J. MASTROMARCO, III (P86871)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
tmastromarco@mastromarcofirm.com